# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDDIE EPICENO, | 1:06-CV-0434 JMD HC |
| Petitioner, | ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | ORDER DIRECTING CLERK OF COURT TO ENTER JUDGMENT |
| PEOPLE OF THE STATE OF CALIFORNIA, et al., | ORDER DECLINING ISSUANCE OF CERTIFICATE OF APPEALABILITY |
| Respondents. | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Kern County Superior Court.  A jury convicted him of one count of possessing a weapon in prison.  The trial court sentenced Petitioner to 25 years to life in prison.  (Answer at 1.)

Petitioner filed an appeal in the California Court of Appeal.  The court affirmed Petitioner's conviction and sentence in a reasoned opinion.  (Answer at 1-2; Lodged Docs. 1-4.)

Petitioner filed a petition for review in the California Supreme Court.  The court summarily denied review.  (Answer at 2; Lodged Docs. 5-6.)

On March 30, 2006, Petitioner filed the instant petition in this Court.  The petition raises the

following two grounds for relief: 1) Petitioner was denied the right to present a meritorious defense; and 2) Petitioner's rights were violated when the trial court, rather than the jury, determined his identity for purposes of his prior convictions.

On May 23, 2007, Respondent filed an answer to the petition.

On October 9, 2007, Petitioner filed a traverse to the answer.

Consent to Jurisdiction of Magistrate Judge

On April 24, 2006, and again on May 26, 2006, Petitioner filed a Consent to Jurisdiction of United States Magistrate Judge. (Court Docs. 6, 10.)  On April 20, 2007, Respondent also filed a Consent to Jurisdiction of United States Magistrate Judge. (Court Doc. 16.)  On May 22, 2007, the Court issued a consent order reassigning the case to Magistrate Judge William M. Wunderlich. (Court Doc. 17.)  On October 8, 2008, the Court reassigned the case to the undersigned. (Court Doc. 29.)

**FACTUAL BACKGROUND**[1]

Petitioner was a prisoner at North Kern State Prison.  After finding him involved in two fights with other inmates within a three- or four-day period, prison staff suspected Petitioner was attempting to provoke a punitive transfer to the administrative segregation unit in order to smuggle contraband there in a body cavity.  Petitioner was x-rayed, and a package containing four sharpened shards of a drinking cup was found in his rectum.

The District Attorney filed an information charging Petitioner with one count of possessing a weapon while a prisoner.  The information also alleged that Petitioner's prior criminal record included two felony convictions qualifying as strikes under the three strikes law.

The prosecution moved in limine to exclude defenses of duress and necessity.  At the hearing on the motion, defense counsel made an offer of proof, attempting to show that the evidence would support those defenses.  Counsel explained that a short time after Petitioner entered the prison, two inmates gave him a package and told him to conceal it in a body cavity and then get into a fight so he could smuggle the package into the administrative segregation unit.  Petitioner believed that if he

---

[1]   The facts are derived from the factual summary set forth by the California Court of Appeal in its opinion of January 10, 2005 and are presumed correct.  28 U.S.C. §§ 2254(d)(2), (e)(1); Lodged Doc. 4.

1   refused, the other inmates would attack him "at that point in time or possibly later," and he "felt he

2   was in immediate danger."  Petitioner attempted to comply with the inmates' demand, but the first

3   fight he got into resulted in his being moved to a location other than the administrative segregation

4   unit.  Two other inmates then told him "he better get the stuff into ad. seg. or there would be, quote,

5   serious consequences."  Petitioner took this "as a threat either for immediate injury or future injury."

6   He again attempted to comply, but this time the ruse was detected.

7        The court ruled that Petitioner would be allowed to put on "evidence of the circumstances

8   with regard to people coming and talking to him, how he got the object, why he put it there," but that

9   jury instructions on duress and necessity would not be given, and defense counsel could not argue

10  those defenses to the jury.  The court stated that "even assuming that the evidence would rise to the

11  level of immediate danger," there was "no offer of proof that the defendant was without opportunity

12  to seek the protection of prison authorities...."  Defense counsel replied that Petitioner believed that

13  "eventually he could have some retaliation" even if he obtained some protection from prison

14  authorities in the short run.  The court concluded that fear of eventual retaliation did not suffice to

15  support the defenses and confirmed its ruling.  The court did allow Petitioner to present a defense of

16  mistake of fact based on his claim that he did not know what the package contained.

17       At trial, Petitioner testified that when inmates first approached him about smuggling

18  something into the administrative segregation unit, he was locked in his cell and the other inmates

19  spoke to him through his cell door.  They could not give him the package at that time because there

20  were no openings in the door.  During this encounter, Petitioner believed that he would be harmed if

21  he refused to comply.  Later, in the dayroom, one of the other inmates gave him the package and said

22  that if Petitioner refused, "we can talk about it later on."  Petitioner understood this as a threat that he

23  would be beaten or killed.  After his first attempt failed and he was moved to another housing unit,

24  two inmates other than those who first contacted him demanded that he keep trying.  Petitioner

25  testified, "I felt they could find me anywhere I went."  He continued to fear for his safety if he should

26  refuse or fail to carry out the task.

27       During trial, the court held a bench conference to discuss the question of whether it or the

28  jury should decide whether Petitioner was the person named in the records of his prior convictions.

1  Defense counsel argued that this question should be decided by the jury.  The court disagreed and

2  made the finding that Petitioner was the person whose name appeared in the records.

3      The jury found Petitioner guilty as charged and found (based in part on the court's finding

4  regarding the identity of the person named in the records) that he committed the priors set forth in the

5  information.  The court denied Petitioner's request to strike priors and sentenced him to 25 years to

6  life under the three strikes law, consecutive to the term he was already serving.

7                                    **DISCUSSION**

8  **I.  Jurisdiction**

9      Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant

10 to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of

11 the United States.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362,

12 375 n.7 (2000).  Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S.

13 Constitution.  In addition, the conviction challenged arises out of the Kern County Superior Court,

14 which is located within the jurisdiction of this court.  28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

15 Accordingly, the Court has jurisdiction over the action.

16     On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of

17 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment.

18 Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997),

19 *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir. 1996), *cert. denied,* 520 U.S. 1107 (1997),

20 *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only

21 applicable to cases filed after statute's enactment).  The instant petition was filed after the enactment

22 of the AEDPA; thus, it is governed by its provisions.

23 **II.  Legal Standard of Review**

24     This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody

25 pursuant to the judgment of a State court only on the ground that he is in custody in violation of the

26 Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

27     The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death

28 Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade, 538 U.S. 63, 70 (2003).

1   Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of

2   the claim "resulted in a decision that was contrary to, or involved an unreasonable application of,

3   clearly established Federal law, as determined by the Supreme Court of the United States" or

4   "resulted in a decision that was based on an unreasonable determination of the facts in light of the

5   evidence presented in the State Court proceeding."  28 U.S.C. § 2254(d); <u>see</u> <u>Lockyer</u>, 538 U.S. at

6   70-71; <u>see</u> <u>Williams</u>, 529 U.S. at 413.

7        As a threshold matter, this Court must "first decide what constitutes 'clearly established

8   Federal law, as determined by the Supreme Court of the United States.'"  <u>Lockyer</u>, 538 U.S. at 71,

9   *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court

10  must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time

11  of the relevant state-court decision."  <u>Id.</u>, *quoting* <u>Williams</u>, 592 U.S. at 412.  "In other words,

12  'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set

13  forth by the Supreme Court at the time the state court renders its decision."  <u>Id.</u>

14       Finally, this Court must consider whether the state court's decision was "contrary to, or

15  involved an unreasonable application of, clearly established Federal law."  <u>Lockyer</u>, 538 U.S. at 72,

16  *quoting* 28 U.S.C. § 2254(d)(1).  "Under the 'contrary to' clause, a federal habeas court may grant

17  the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a

18  question of law or if the state court decides a case differently than [the] Court has on a set of

19  materially indistinguishable facts."  <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>Lockyer</u>, 538 U.S. at 72.

20  "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state court

21  identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies

22  that principle to the facts of the prisoner's case."  <u>Williams</u>, 529 U.S. at 413.

23       "[A] federal court may not issue the writ simply because the court concludes in its

24  independent judgment that the relevant state court decision applied clearly established federal law

25  erroneously or incorrectly.  Rather, that application must also be unreasonable."  <u>Id.</u> at 411.  A

26  federal habeas court making the "unreasonable application" inquiry should ask whether the state

27  court's application of clearly established federal law was "objectively unreasonable."  <u>Id.</u> at 409.

28       Petitioner has the burden of establishing that the decision of the state court is contrary to or

1   involved an unreasonable application of United States Supreme Court precedent.  Baylor v. Estelle,

2   94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,

3   Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court

4   decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.

5   1999).

6       AEDPA requires that we give considerable deference to state court decisions.  The state

7   court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's

8   interpretation of its own laws.  Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir. 2002), *cert. denied*,

9   537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

10  **III.  Review of Petitioner's Claims**

11      **A.  Ground One**

12      Petitioner argues that he was denied the right to present a meritorious defense when the trial

13  court refused to give instructions or allow argument regarding the defenses of duress and necessity.

14      This claim was presented in an appeal to the California Court of Appeal, which affirmed

15  Petitioner's conviction and sentence in a reasoned opinion.  (Lodged Docs. 1-4.)  The issue was then

16  raised in a petition for review to the California Supreme Court, which summarily denied review.

17  (Lodged Docs. 5-6.)  The California Supreme Court, by its "silent order" denying review, is

18  presumed to have denied the claims presented for the same reasons stated in the opinion of the lower

19  court.  Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

20      In rejecting Petitioner's claim, the Court of Appeal found that the evidence did not warrant

21  jury instructions or argument regarding the defenses of duress and necessity.  (Lodged Doc. 4 at 4-7.)

22      "As a general proposition a defendant is entitled to an instruction as to any recognized

23  defense for which there exists evidence sufficient for a reasonable jury to find in his favor."

24  Mathews v. U.S., 485 U.S. 58, 63 (1988).  "A defendant has the right to have a jury resolve disputed

25  factual issues.  However, where the evidence, even if believed, does not establish all of the elements

26  of a defense, ... the trial judge need not submit the defense to the jury."  U.S. v. Perdomo-Espana,

27  522 F.3d 983, 987 (9th Cir. 2008) (quotation marks omitted).

28      Under California law, the defense of duress absolves a defendant of criminal liability where

1) he acted under threats and menaces which would cause a reasonable person to fear that his life would be in immediate danger if he did not engage in the conduct charged; and 2) he actually believed his life was so endangered.  See CALJIC 4.40.  Duress is not available based on threats, menaces, or fear of future danger.  Id.; People v. Bacigalupo, 1 Cal.4th 103, 125 (1991) ("Central to a defense of duress is the immediacy of the threat or menace on which the defense is premised."), *vacated on other grounds by* Bacigalupo v. California, 506 U.S. 802 (1992).

"[A]lthough the exact confines of the necessity defense remain clouded, a well-established central element involves the emergency nature of the situation, i.e., the imminence of the greater harm which the illegal act seeks to prevent.  The commission of a crime cannot be countenanced where there exists the possibility of some alternate means to alleviate the threatened greater harm." People v. Patrick, 126 Cal.App.3d 952, 960 (1981) (citations omitted); see also CALJIC 4.43.

Petitioner's initial offer of proof and testimony established that he was approached by other inmates and instructed to do whatever was necessary to transport an item into administrative segregation.  Petitioner felt that he would be harmed if he did not comply with the instructions. Initially, the other inmates could not give Petitioner the item because he was locked behind a solid door.  Later, while Petitioner was in the dayroom, the other inmates gave him the item and reiterated that he had to get it to administrative segregation.  Petitioner again felt threatened.  (RT at 2-5, 119-23.)

Petitioner got into a fight so he would be moved to administrative segregation.  Instead of being moved to segregation, however, Petitioner was only moved to a different housing unit. Petitioner was approached again by different individuals and told he still had to get the item to administrative segregation.  Petitioner got into a second fight because he was still afraid of what might happen to him.  Prison officials became suspicious and convinced Petitioner to surrender the item.  (RT at 5-6, 124-34.)

The state court's determination was not unreasonable.  The evidence did not show that Petitioner was threatened with immediate or imminent harm if he failed to begin carrying out the plan to smuggle the item into administrative segregation.  Further, Petitioner had time and the opportunity to seek protection from the prison staff as an alternative to committing the offense.  As

1   the evidence was insufficient to support a finding of duress or necessity, the trial court was not

2   required to give instructions or allow argument regarding the defenses.

3       **B. Ground Two**

4       Petitioner argues that his rights were violated when the trial court, rather than the jury,

5   determined his identity for purposes of his prior convictions.

6       This claim was presented in an appeal to the California Court of Appeal, which affirmed

7   Petitioner's conviction and sentence in a reasoned opinion. (Lodged Docs. 1-4.) The issue was then

8   raised in a petition for review to the California Supreme Court, which summarily denied review.

9   (Lodged Docs. 5-6.) The California Supreme Court, by its "silent order" denying review, is

10  presumed to have denied the claims presented for the same reasons stated in the opinion of the lower

11  court. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

12      In rejecting Petitioner's claim, the Court of Appeal found that there is no constitutional right

13  to have a jury determine identity for purposes of prior convictions. (Lodged Doc. 4 at 8-9.)

14      While *Cunningham* held that the imposition of an upper term based on aggravating factors

15  not found by the jury violated the Sixth Amendment, the Court retained an exception for findings of

16  a defendant's prior convictions. Cunningham v. California, 127 S.Ct. 856, 868 (2007) ("Except for a

17  prior conviction, 'any fact that increases the penalty for a crime beyond the prescribed statutory

18  maximum must be submitted to a jury, and proved beyond a reasonable doubt.'"). The question of

19  identity–that is, whether the defendant is the same person who suffered the earlier conviction–falls

20  within the prior conviction exception. U.S. v. Browning, 436 F.3d 780, 782 (7th Cir. 2006) ("The

21  use of a prior conviction to enhance a defendant's sentence presupposes that it is a prior conviction *of*

22  *him,* and if there is any doubt on that score the judge has to resolve it."); U.S. v. Carrillo-Beltran, 424

23  F.3d 845, 848 (8th Cir. 2005) (finding that a judge may determine whether a prior conviction under

24  an alias is attributable to a defendant); Jackson v. Kirkland, 2008 WL 4298217, *8 (N.D. Cal. 2008).

25      The state court's determination was therefore not an unreasonable application of Supreme

26  Court law, as the trial judge was authorized to determine whether Petitioner was the person who had

27  suffered the prior convictions.

28

1    **IV.  Certificate of Appealability**

2        A state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a

3    district court's denial of his petition, and an appeal is only allowed in certain circumstances.  Miller-

4    El v. Cockrell, 123 S.Ct. 1029, 1039 (2003).  The controlling statute in determining whether to issue

5    a certificate of appealability is 28 U.S.C. § 2253, which provides as follows:

6
7        (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district
         judge, the final order shall be subject to review, on appeal, by the court of appeals for
         the circuit in which the proceeding is held.
8
9        (b) There shall be no right of appeal from a final order in a proceeding to test the
         validity of a warrant to remove to another district or place for commitment or trial a
         person charged with a criminal offense against the United States, or to test the validity
10       of such person's detention pending removal proceedings.

11       (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal
         may not be taken to the court of appeals from–
12

13       (A) the final order in a habeas corpus proceeding in which the detention complained
         of arises out of process issued by a State court; or
14
         (B) the final order in a proceeding under section 2255.
15
         (2) A certificate of appealability may issue under paragraph (1) only if the applicant
16       has made a substantial showing of the denial of a constitutional right.

17       (3) The certificate of appealability under paragraph (1) shall indicate which specific
         issue or issues satisfy the showing required by paragraph (2).
18

19   28 U.S.C. § 2253.

20       If a court denies a petitioner's petition, the court may only issue a certificate of appealability

21   "if jurists of reason could disagree with the district court's resolution of his constitutional claims or

22   that jurists could conclude the issues presented are adequate to deserve encouragement to proceed

23   further."  Miller-El, 123 S.Ct. at 1034; Slack v. McDaniel, 529 U.S. 473, 484 (2000).  While the

24   petitioner is not required to prove the merits of his case, he must demonstrate "something more than

25   the absence of frivolity or the existence of mere good faith on his . . . part."  Miller-El, 123 S.Ct. at

26   1040.

27       In the present case, the Court finds that reasonable jurists would not find the Court's

28   determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or

deserving of encouragement to proceed further.  Petitioner has not made the required substantial showing of the denial of a constitutional right.  Accordingly, the Court hereby DECLINES to issue a certificate of appealability.

## ORDER

Accordingly, IT IS HEREBY ORDERED that:

1. The Petition for Writ of Habeas Corpus is DENIED with prejudice;

2. The Clerk of Court is DIRECTED to enter judgment; and

3. The Court DECLINES to issue a certificate of appealability.


IT IS SO ORDERED.

**Dated:     October 9, 2008                               /s/ John M. Dixon**
                                             UNITED STATES MAGISTRATE JUDGE